IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02311-REB-KLM

GREG L. GATRELL,

        Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
GERRY WHITMAN, Chief of the Denver Police Department in his individual and official
capacities,
S. CANNON, Deputy Sheriff of the Denver Police Department in her individual and official
capacities,
JOHN DOE #1, Deputy Sheriff of the Denver Police Department, in his individual and
official capacities, and
JOHN DOE #2, Deputy Sheriff of the Denver Police Department, in his individual and
official capacities,

        Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Defendant Whitman's **Motion to Dismiss**

**Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 21; Filed January 3, 2011] (the "Motion").

Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 35] in opposition to the

Motion on March 1, 2011.  Defendant filed a Reply [Docket No. 36] on March 10, 2011.

Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motion has been

referred to this Court for a recommendation regarding disposition.  The Court has reviewed

the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the

premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion be

**GRANTED**.

## I. Summary of the Case

On October 29, 2010, Plaintiff filed an Amended Complaint [Docket No. 6] in which

he claims that Defendant Whitman (hereinafter, "Defendant") violated his Fifth Amendment

right to receive due process by failing to adequately train and supervise Denver Police

Department officers in evidence collection and handling procedures.  *Amended*

*Complaint* [#6] at 20, ¶¶ 66-67; *see Motion* [#21] at 1-2 ("Plaintiff's first claim for relief in the

Amended Complaint is the only claim that makes allegations against Chief Whitman.").

Plaintiff alleges as follows:

> Gerry Whitman failed to adequately train and/or supervise his subordinates:
> (1) to reliably mark, tag, and secure physical evidence from a crime scene;
> (2) to provide a procedure to ensure that physical evidence presented to the
> District Attorney's Office is what it is purported to be; (3) to provide a
> procedure that provides a criminal defendant access to physical crime scene
> evidence before it is destroyed.
>
> By failing to train and supervise to prevent the above and failing to establish
> a procedure and/or practices to prevent the above constitutional violations,
> Defendant Whitman violated [Plaintiff]'s due process rights.  Specifically, the
> lack of a procedure to reliably tag, mark and preserve the physical crime
> scene evidence violated [Plaintiff]'s due process rights under the Fifth
> Amendment of the United States Constitution.

*Amended Complaint* [#6] at 20, ¶ 66-67.  This allegation is the only mention of Defendant

in the Amended Complaint.

Defendant contends that Plaintiff's claim against him should be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to allege that he personally participated

in any way in the Denver Police Department's criminal investigation of Plaintiff.  *Motion*

[#21] at 2.  Accordingly, Defendant argues that he cannot be responsible for any

constitutional violations that allegedly occurred during that investigation.  Defendant also

argues that "[a]ny official capacity claims against [him] are duplicative of claims against the

-2-

City and County of Denver, which is [also] a defendant in [this] action." *Id.* at 3 (relying on *Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)); *see also id.* at 4 ("Since the City and County of Denver is already a defendant in the case, the naming of Chief Whitman is redundant.").

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted.").  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

When considering Plaintiff's Amended Complaint [#6] and Response [#35], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

Plaintiff brings his constitutional claim against Defendant pursuant to 42 U.S.C. § 1983. "Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional

violations committed by his subordinates.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th

Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v.*

*Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991)

("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v.*

*Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir.

1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983

case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))); *Serna v. Colo. Dep't*

*of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983

for their own culpable involvement in the violation of a person's constitutional rights.").

Courts have explained that a defendant in a supervisory position was personally

involved in an alleged constitutional violation committed by his subordinates in two

situations.  First, a supervisor was personally involved when he personally directed his

subordinates to take the action resulting in the alleged constitutional violation.  *Woodward*

*v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, a supervisor was

personally involved when he had actual knowledge that his subordinates were committing

the alleged constitutional violation and he acquiesced in its commission.  *Id.* (citing

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor

liability requires "allegations of personal direction or of actual knowledge and

acquiescence")); *see also id.* at 1399 n.11 (To show an affirmative link between the

defendant supervisor's conduct and unconstitutional behavior by his subordinates, a

plaintiff must establish "an intentional, conscious, and deliberate act by the defendant

participating in, or knowingly acquiescing in, the unconstitutional behavior.").  The Court of

Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence

as follows: "In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior." *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence. In *Ashcroft v. Iqbal*, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation. 129 S. Ct. at 1949. In *Iqbal*, the Court considered a federal detainee's claim that his designation as "a person of high interest" was the result of unconstitutional discrimination on the basis of his race, religion, or national origin. *Id.* at 1944. The detainee asserted his discrimination claim against, *inter alios*, the Attorney General of the United States and the Director of the Federal Bureau of Investigation (FBI). *Id.* He argued that these senior officials established the policy and procedures implemented by the prison officials who actually made the allegedly discriminatory designation. *Id.* ("The pleading names [former Attorney General] Ashcroft as the 'principal architect' of the policy, and identifies [Director of the FBI] Mueller as 'instrumental in its adoption, promulgation, and implementation.'" (citations omitted)). The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified

immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* at 1949.

*Iqbal* has been interpreted by at least two Courts of Appeals as narrowing the scope of what constitutes "personal involvement" by a supervisor in an alleged constitutional violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983 . . . supervisory liability itself may no longer be tenable. *See Iqbal*, 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer."). After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability. *See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

*Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010). Accordingly, to establish that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates, a plaintiff must show that the defendant did more than simply acquiesce in the violation.[1]

In this case, Defendant contends that Plaintiff has not alleged an "'affirmative link'

---

[1] The Courts of Appeals have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis. In *Iqbal*, the Supreme Court suggested that a defendant who acquiesced in a constitutional violation committed by his subordinates was personally involved in the violation only if his acquiescence was motivated by a "purpose" to allow or further the violation. *See* 129 S. Ct. at 1949. In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesced in a constitutional violation was personally involved in that violation only if he shared the same "state of mind" with his subordinates who actually committed the violation. *See* 455 F.3d at 1151.

between the [specific facts of the Denver Police Department's criminal investigation of Plaintiff] and [Defendant]'s individual actions." *Motion* [#21] at 3. The Court agrees. Plaintiff's "allegations [against Defendant] only deal with training, supervision, and procedures of the [Denver] Police Department as a whole." *Id.* These general allegations are insufficient to state a claim against Defendant. Plaintiff's failure to allege a link between Defendant's direct actions and the Police Department's criminal investigation of Plaintiff is a fatal omission. Without this link, the Amended Complaint does not allege any purpose by Defendant to violate Plaintiff's constitutional rights. In his Response [#35], Plaintiff does not state additional allegations against Defendant. Plaintiff also fails to offer any explanation of how Defendant personally participated in the constitutional violations allegedly committed by his subordinates in the Denver Police Department. In fact, Plaintiff's Response does not mention Defendant at all. The Court therefore finds that Plaintiff's claim against Defendant in his individual capacity should be dismissed.

With regard to Plaintiff's claim against Defendant in his official capacity, the Court again agrees with Defendant and finds that the claim should be dismissed as duplicative. *Motion* [#21] at 3-4. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* Plaintiff has separately named the entity with which Defendant holds an official position, the City and County of Denver, as a defendant in this case. Accordingly, there is no need for Plaintiff to sue Defendant in his official capacity as doing so has no effect on the analysis or outcome of Plaintiff's claims. *See Saleh v. Federal Bureau of Prisons, et al.*, No. 05-cv-02467-EWN-KLM, Docket No. 196 at 9-12 (D. Colo. July 29, 2008) (unreported decision)

(Recommendation of United States Magistrate Judge); *see also McLin v. City of Chicago*, 742 F. Supp. 994, 997 (N.D. Ill. 1990) ("Because the [entity] is already a defendant, dismissing [the individual defendants in their official capacities] does not prejudice plaintiffs, and it clarifies and streamlines the pleadings.").

The Court concludes that the entirety of Plaintiff's claim against Defendant should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (stating that "where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. Sept. 9, 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See,*

*e.g., Arocho v. Nafziger*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal unless the plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, __ F.3d __, 2010 WL 4909644, at *5 (10th Cir. Oct. 26, 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

In this case, the Court finds that dismissal of Plaintiff's claim against Defendant with prejudice is appropriate.  Plaintiff made no effort to respond to the arguments contained in Defendant's Motion [#21] in his Response [#35].  Moreover, at the Scheduling Conference held on April 7, 2011, the Court notified Plaintiff that his case would benefit from the assistance of counsel and the amendment of the Amended Complaint.  The Court set a pleading amendment deadline of May 23, 2011.  Plaintiff did not file a second amended complaint before this deadline.  Based on Plaintiff's failure to address Defendant's personal participation in his Response and failure to file a second amended complaint, the Court infers that Plaintiff simply does not have anything to add to his allegations against Defendant.  Accordingly, the Court concludes that granting Plaintiff further leave to amend would be futile and dismissal with prejudice is appropriate.

## IV.  Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that the Motion [#21] be

**GRANTED** and Plaintiff's claim against Defendant Gerry Whitman be **DISMISSED with prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  May 26, 2011

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge